UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KIMBERLY M. o/b/o L.L.M.,[1]

                                  Plaintiff,                Case # 23-CV-6444-FPG

v.                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

## INTRODUCTION

Kimberly M. ("Plaintiff") brings this action on behalf of her daughter ("L.L.M.") pursuant to Title XVI of the Social Security Act (the "Act"). She seeks review of the final decision of the Commissioner of Social Security that denied L.L.M.'s Supplemental Security Income ("SSI") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 7, 9. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

L.L.M.'s application for SSI was filed with the Social Security Administration (the "SSA") in November 2020. Tr.[2] 62. L.L.M. was alleged to have been disabled since September 2017. *Id.* In May 2022, Administrative Law Judge Asad M. Ba-Yunus ("the ALJ") issued a

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

decision finding that L.L.M. is not disabled.  Tr. 16-26.  In June 2023, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted).  The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation omitted).

### II.    Child Disability Standard

An individual under 18 years old will be considered disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924.  At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b).  If so, the child is not disabled.  If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of

impairments that is "severe," meaning that it causes "more than minimal functional limitations." *Id.* § 416.924(c). If the child does not have a severe impairment or combination of impairments, he or she is not disabled. *Id.* If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.924(d). If the child's impairment meets or medically or functionally equals the criteria of the Listings, he or she is disabled. *Id.*

To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ assesses the child's functioning in six domains: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating with Others; (4) Moving About and Manipulating Objects; (5) Caring for Yourself; and (6) Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a marked limitation in a domain when his or her impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an extreme limitation in a domain when his or her impairment(s) "interferes very seriously" with the ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed L.L.M.'s benefits application under the process described above. At step one, the ALJ found that L.L.M. has not engaged in substantial gainful activity. Tr. 17. At

step two, the ALJ found that L.L.M. has severe impairments of congenital cataracts, aphakia, and juvenile glaucoma. *Id.* At step three, the ALJ found that these impairments, alone or in combination, do not meet or medically equal a Listings impairment. *Id.* Next, the ALJ found that L.L.M.'s impairments, alone or in combination, do not functionally equal a Listings impairment. Tr. 18. The ALJ concluded that L.L.M. had a "less than marked" limitation in the domains of acquiring and using information and health and physical well-being. *Id.* The ALJ concluded that L.L.M. had no limitations in the other domains. *Id.* Therefore, the ALJ concluded that L.L.M. is not disabled. Tr. 26.

## II. Analysis

Due to her aphakia and glaucoma, L.L.M. has visual difficulties. L.L.M. underwent an eye examination in October 2018, when she was in second grade. Tr. 232. The examination revealed that L.L.M. had 20/60 vision in her right eye and 20/100 vision in her left eye. *Id.* L.L.M. wears eyeglasses and receives a variety of accommodations at school. Tr. 505-07. Plaintiff contends that L.L.M.'s "visual problems" cause "issues with understanding" that warranted greater limitations in the domain of acquiring and using information. ECF No. 7-1 at 8. She asserts that the ALJ erred in his evaluation of that domain.

Generally, the domain of acquiring and using information focuses on a child's ability to acquire information and to use the information that she has learned. 20 C.F.R. § 416.926a(g). This domain "considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." SSR 09-3p, 2009 WL 396025, at *2 (Feb. 17, 2009). For school-age children like L.L.M., the regulations provide the following guidance:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will

need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv). A child may have limited functioning in this domain if he or she has "difficulty recalling important things [she] learned in school yesterday," has difficulty "solving mathematics questions or computing arithmetic answers," can only talk "in short, simple sentences," or has "difficulty explaining what [she] mean[s]." *Id.* § 416.926a(g)(3)(iii)-(v).

Because Plaintiff challenges only the ALJ's conclusion with respect to this one domain, she faces a higher burden to show that remand is warranted. As stated, to establish disability at step three, the child's impairments must cause "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The ALJ found no marked or extreme limitation in any domain. *See* Tr. 18. Therefore, to show harmful error, Plaintiff would need to demonstrate that the record could reasonably support an extreme limitation in the domain of acquiring and using information. Otherwise, any error with respect to that domain would be harmless, and remand would be futile. *See, e.g., Golibersuch v. Comm'r of Soc. Sec.*, No. 18-CV-976, 2020 WL 409991, at *6 (W.D.N.Y. Jan. 24, 2020) (ALJ's erroneous failure to find marked limitation in domain of attending and completing tasks was harmless where the Court upheld ALJ's "less-than-marked" findings in other domains); *Minto v. Colvin*, No. 15-CV-6698, 2016 WL 5024239, at *5 (W.D.N.Y. Sept. 20, 2016) (affirming disability determination notwithstanding that some evidence contradicted the ALJ's finding that Plaintiff had "*no*

limitations whatsoever in the domain of Caring for Oneself," since a "finding of an "extreme" limitation in this domain [was] unsupportable based on the present record"); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

A child is deemed to be "extremely" limited in a domain when her impairment "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities" in the domain.  20 C.F.R. § 416.926a(e)(3)(i).  "Extreme' limitation is the rating" that the SSA gives "to the worst limitations."  *Id.*  To determine whether a child's functional limitations are extreme, the SSA "use[s] a picture constructed of the child's functioning in [the] domain."  S.S.R. 09-1p, 2009 WL 396031, at *7.  The following questions are considered:

1. How many of the child's activities in the domain are limited (for example, one, few, several, many, or all)?

2. How important are the limited activities to the child's age-appropriate functioning (for example, basic, marginally important, or essential)?

3. How frequently do the activities occur and how frequently are they limited (for example, daily, once a week, or only occasionally)?

4. Where do the limitations occur (for example, only at home or in all settings)?

5. What factors are involved in the limited activities (for example, does the child receive support from a person, medication, treatment, device, or structured/supportive setting)?

*Id.*  "The judgment about whether there is a 'marked' or 'extreme' limitation of a domain depends on the importance and frequency of the limited activities and the relative weight of the other considerations described above."  *Id.*

The only evidence that Plaintiff cites to support an "extreme" limitation in the domain of acquiring and using information is the May 2022 questionnaire of Latasha Pomerantz—a classroom substitute who worked with L.L.M. for several months while L.L.M. was in fifth

grade.  Tr. 309, 316.  She opined that L.L.M. had difficulties in that domain.  Tr. 310. Specifically, Pomerantz believed that L.L.M. had "very serious problem[s]" reading and comprehending written material; understanding and participating in class discussions; and expressing ideas in written form.  *Id.*  She also stated that L.L.M. has a "serious problem" in providing organized oral explanations and adequate descriptions.  *Id.*  Pomerantz wrote that L.L.M. struggled to work independently "due to her lack of ability in expressing ideas in written form," though she was able to "provide verbal explanations of her answers."  *Id.*  Pomerantz did not identify any other activities in any domain in which L.L.M. had "serious" or "very serious" problems.  *See* Tr. 310-14.

Plaintiff asserts that the "very serious" problems that Pomerantz identified are equal to "extreme" limitations in those activities.  *See* ECF No. 7-1 at 12.  But even if that is true, "very serious" problems in certain *activities* does not compel a finding of an extreme limitation in the *domain as a whole.  See Nicole A. v. Comm'r of Soc. Sec.*, No. 22-CV-343, 2024 WL 3228001, at *4 (W.D.N.Y. June 28, 2024) (collecting cases).  As noted above, the regulations require consideration of the number, severity, and frequency of the limited activities to determine whether there is an extreme limitation in an overall domain.  *See* S.S.R. 09-1p, 2009 WL 396031, at *7.  This qualitative analysis is not reducible to a "set formula."  *Id.*

Plaintiff fails to undertake that analysis in her briefing, however.  She does not explain why L.L.M.'s limitations in those three discrete activities justify an extreme limitation in the domain as a whole; nor does she marshal other evidence besides Pomerantz's questionnaire to demonstrate that an extreme limitation is warranted.  It is not the Court's responsibility to do so on her behalf.  *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough

merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Absent more developed argument, the Court is not convinced that Pomerantz's questionnaire could reasonably support an extreme limitation in acquiring and using information. Testing shows that L.L.M. has average intelligence and is capable of understanding and applying new information in her daily life.  *See* Tr. 498; *see also* Tr. 53-54 (noting that L.L.M. does not have difficulty understanding a homework assignment once it is explained to her). From first through fifth grades, L.L.M. usually "met" or "partially met" the academic standards for her courses; rarely did she achieve "far below" state standards.  *See* Tr. 488-96.  L.L.M.'s academic transcripts show that she continued to develop her reading, writing, and other academic skills over time, albeit below grade level.  Tr. 489, 491, 493, 494.  In fifth grade, while her teacher expressed concern that L.L.M. would not be ready for reading at the sixth-grade level, L.L.M. was still meeting "most of the standards" in mathematics, science, and social studies.  Tr. 488-89.  L.L.M.'s hardworking, positive attitude at school is routinely noted in her school records. *See, e.g.*, Tr. 500.  L.L.M. consistently wears her eyeglasses and is adept at using her assistive technology, including her tablet, to "focus and learn."  Tr. 502; *see also* 20 C.F.R. § 416.924a(b)(5)(iii) (noting that adaptations like "assistive devices" and "eyeglasses" may increase one's "functioning").

To be sure, L.L.M. received significant accommodations in school,[3] and the regulations require that such accommodations be taken into account.  *See id.* § 416.924a(b)(5)(iv)(C).  It may be that, considered together, the evidence better supports a finding of a marked limitation in

---

[3] Among other things, L.L.M. received completed notes for her coursework, special paper for writing, a magnifier, a tablet, large-print texts, extended time to complete tasks, and additional special-education services.  Tr. 504-07. L.L.M. testified that, outside of the school setting, she was able to complete her homework independently so long as the relevant text was enlarged.  *See* Tr. 47-48.

the domain of acquiring and using information, as opposed to the ALJ's finding of less than marked. Tr. 18. But—particularly in the absence of more developed argument—Plaintiff has not shown that the record could reasonably support a finding of extreme limitation, which is reserved for the "worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). As a result, any error that Plaintiff identifies with respect to the ALJ's evaluation of this domain is harmless, and remand is not warranted. *Accord Minto*, 2016 WL 5024239, at *5.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 8, 2024
      Rochester, New York               HON. FRANK P. GERACI, JR.
                                  United States District Judge
                                  Western District of New York